# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AERPIO PHARMACEUTICALS, INC.,
    Plaintiff,

vs.

DR. SUSAN QUAGGIN, et al.,
    Defendants.

Case No. 1:18-cv-794
Dlott, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Aerpio Pharmaceuticals, Inc. (Aerpio) brings this action against defendants Dr.

Susan Quaggin, Mannin Research Inc. (Mannin), and Northwestern University Office of

Sponsored Research (University). Plaintiff Aerpio brings claims for breach of contract, tortious

interference with contractual relations, conversion, unjust enrichment, *quantum meruit,*

declaratory judgment and specific performance/injunctive relief related to certain patent

applications and Quaggin's assignment of intellectual property to Mannin. This matter is before

the Court on defendant Quaggin's motion to stay litigation and compel arbitration (Doc. 29),

plaintiff Aerpio's response in opposition (Doc. 36), and Quaggin's reply in support of the motion

(Doc. 47); the University's motion to dismiss the complaint (Doc. 32), Aerpio's opposing

memorandum (Doc. 45)[1], and the University's reply (Doc. 51); and defendant Mannin's motion

to dismiss the complaint for lack of jurisdiction or, in the alternative, to dismiss plaintiff's

declaratory judgment claim as to patent application inventorship and/or stay all claims against

Mannin pending arbitration between plaintiff and Quaggin (Doc. 42), Aerpio's opposing

memorandum (Doc. 49), and Mannin's reply (Doc. 52). Aerpio moves for leave to file an

omnibus surreply memorandum in opposition to defendants' motions (Doc. 53), which

defendants Quaggin, Mannin, and Northwestern oppose (Docs. 54, 55, 56).

---

[1] Aerpio has also filed an unredacted version of the memorandum under seal. (Doc. 59).

## I. Factual Background

Plaintiff Aerpio is a biopharmaceutical company that focuses on "advancing first-in-class treatments for eye diseases." (Complaint, Doc. 1, ¶ 1). Aerpio's current lead product candidate is AKB-9778. (*Id.*, ¶ 2). AKB-9778 is in Phase 2b clinical trials after "an extensive pre-clinical and research program." (*Id.*). Aerpio is developing AKB-9778 to treat eye diseases, including glaucoma and diabetic retinopathy. (*Id.*). AKB-9778 is a molecule that inhibits HPTPβ, an enzyme that can disrupt the normal function of the Tie-2 receptor pathway. (*Id.*). Vascular endothelial protein (VE-PTP) is the "mouse homologue" of HPTPβ and is therefore used as a research tool to find molecules that will inhibit HPTPβ in humans. (*Id.*). The terms HPTPβ and VE-PTP are often used interchangeably. (*Id.*). AKB-9778 restores the normal anatomy of diseased blood vessels at the cellular level by inhibiting VE-PTP/HPTPβ and restoring the normal function of the Tie-2 receptor. (*Id.*).

Aerpio and Quaggin began their relationship in 2011 when Quaggin and Aerpio's predecessor-in-interest, Akebia Therapeutics, Inc. (Akebia), entered into a Unilateral Confidentiality Agreement (UCA). (*Id.*, ¶ 3; Exh. A). The purpose of the UCA was to protect Akebia's competitively valuable confidential information and materials, which included Tie-2 antagonists and HPTPβ inhibitors, from disclosure and misuse. (*Id.*). In 2013, Quaggin signed a Consulting Agreement (CSA) with plaintiff Aerpio and joined its Pre-Clinical Scientific Advisory Board to provide services related to therapeutics targeted at the inhibition of HPTPβ. (*Id.*; Exh. B). That same year, Quaggin moved from Canada and joined the University as an employee. (*Id.*). Aerpio and the University entered into a Material Transfer Agreement (MTA)

under which Quaggin would continue to conduct experiments as an Investigator related to the inhibition of HPTPβ. (*Id.*; Exh. C).

Aerpio alleges that under the agreements, Quaggin received samples of Aerpio's small molecule HPTPβ inhibitors, AKB-9778 and AKB-9785, and access to Aerpio's confidential information and research and development. (*Id.*, ¶ 4). Aerpio alleges that on information and belief, Quaggin had never researched, had access to, or studied small molecule inhibitors of HPTPβ/VE-PTP or their potential clinical use prior to her relationship with Aerpio. (*Id.*). Aerpio alleges that Quaggin breached each of her obligations under the CSA, which required Quaggin to disclose to Aerpio as its exclusive property all inventions, innovations, and intellectual property developed during the term of the engagement; assign all such property to Aerpio; warrant that the CSA would not interfere or conflict with any other contractual obligations; not use, publish, or disclose any confidential information without Aerpio's prior written consent; return all information to Aerpio upon request or termination of the CSA; and treat all information obtained in the course of performing the CSA as confidential. (*Id.*, ¶ 5).

Aerpio also alleges that the University and Quaggin, acting as the University's agent, have breached their obligations under the MTA. (*Id.*, ¶ 6). Aerpio alleges that Quaggin and the University agreed to many of the same obligations that Quaggin agreed to under the CSA, and promised that they would:

- not use Aerpio's materials for any purpose other than the project;
- not modify or reverse engineer the materials, or distribute the materials to a third party without Aerpio's prior written consent;
- keep information related to the materials and MTA confidential;
- not use confidential information for any purpose other than the projects outlined in the agreement without Aerpio's prior written consent;
- provide Aerpio with a written description of an intellectual property derived from or related to Aerpio's materials;
- notify Aerpio of the University's decision to seek or not seek patent protection on any invention;

- notify Aerpio that the University elected to not file or maintain a patent application or patent arising from an invention, giving Aerpio the right to file or maintain the application or patent at its own expense with full control over the prosecution and maintenance thereof;
- provide Aerpio a first option to negotiate an exclusive license to each invention created by University inventors; and
- not transfer or distributor an Aerpio material or related information to any third party or individual outside of Quaggin's laboratory without Aerpio's prior written consent.

(*Id.*).

Aerpio alleges that it has performed all of its obligations under both the CSA and the MTA and that Quaggin has breached both agreements. (Doc. 1, ¶ 7). Aerpio claims that Quaggin violated the parties' contractual agreements in several respects. First, Aerpio alleges that Quaggin breached the agreements and created a conflict of interest by forming a competing company, Mannin, to benefit her and her family, and by taking the position of Chief Scientific Officer with the company. (*Id.*, ¶¶ 8, 9). Aerpio alleges that on information and belief, Quaggin's position requires her to assign any intellectual property to Mannin rather than to Aerpio. (*Id.*, ¶ 8). Aerpio claims that Quaggin has formed Mannin as a competing company using knowledge and information she learned from Aerpio, and Quaggin and Mannin are using Aerpio's own research and knowledge to develop and research competing small molecules and biologics-based VE-PTP/HPTPβ inhibitors. Aerpio alleges that Mannin now presents itself as leading the development of new vascular therapeutics and as "the 'only company' targeting the repair of the normal flow of fluid in the eye with a unique small molecule - presumably via VE-PTP inhibition." (*Id.*, ¶ 10).

Aerpio further claims that Quaggin has breached the CSA and MTA by:

- submitting patent applications based on technology and information Quaggin learned from Aerpio and related to research conducted during the term of the CSA - specifically, the use of VE-PTP inhibitors to treat glaucoma and cystic kidney disease;

- transferring to Mannin, without Aerpio's consent, plaintiff's material and information concerning Aerpio's rights in intellectual property and assigning her patent applications to Mannin;
- failing to disclose any purported intellectual property while attempting to obtain for herself and Mannin patent claims to technology she learned from Aerpio;
- filing for and publishing Aerpio's information in her own patent applications without obtaining Aerpio's prior written consent before disclosing its information in her patent applications; and
- failing to disclose any intellectual property to the University and to advise the University of her actions, thereby causing the University to breach the MTA.

(*Id.*, ¶¶ 12-18, 81). Aerpio alleges that Quaggin and Mannin have improperly benefitted from Aerpio's knowledge by converting its knowledge to intellectual property of Mannin in order to obtain funding from a third-party, Q BioMed Inc. (Q BioMed). (*Id.*, ¶ 11). Aerpio alleges that Q BioMed has invested $4,000,000 into the Mannin intellectual property, which is allegedly based on Aerpio's technology, and which Q BioMed has received a worldwide, exclusive license and option to purchase for $30,000,000. (*Id.*, ¶ 11). Aerpio alleges that Quaggin's actions are a breach of the CSA's implied covenant of good faith and fair dealing, and her actions have enriched Quaggin to the detriment of Aerpio. (*Id.*, ¶¶ 21, 72-73).

Plaintiff brings claims against Quaggin for breach of the CSA (Count I); breach of the MTA against Quaggin and the University (Count II); tortious interference with contract against Quaggin and Mannin, alleged only in the alternative based on allegations that Quaggin was not an agent acting on behalf of the University; she was not acting within the scope of her agency to some degree; or she acted in bad faith (Count III); conversion and unjust enrichment against Quaggin and Mannin (Counts IV, V); in the alternative to Aerpio's claims for breach of contract, tortious interference, and unjust enrichment against Quaggin and Mannin, recovery in *quantum meruit* for the damage caused by Quaggin's assignment of the patent applications to Mannin (Count VI); a claim against Quaggin and Mannin for a declaratory judgment of Aerpio's ownership of the patent applications containing Claims relating to the use of VE-PTP inhibitors

to treat diseases claimed in the applications, which Aerpio alleges were developed under the CSA and/or an Aerpio inventions, or alternatively as joint inventions under the MTA (Count VII); a claim against Quaggin and Mannin for a declaratory judgment of Aerpio's inventorship of the patent applications containing Claims concerning the use of the VE-PTP inhibitors to treat diseases claimed in the applications and ordering the USPTO to take all necessary steps to correct the inventorship (Count VIII); and a claim for specific performance/injunctive relief against Quaggin and Mannin, claiming that they refused to take the necessary steps in the USPTO to correct the named inventors on the applications containing Claims to include Aerpio personnel as the true and actual inventors, and to assign the applications containing Claims to Aerpio as the proper owner under the terms of the CSA and MTA (Count IX).

## II. Arbitrability of the parties' dispute

Defendant Quaggin moves to compel arbitration of Aerpio's claims against her pursuant to the arbitration provision in the parties' CSA, § 10. (Doc. 29). Quaggin argues in her motion that the Court makes the determination as to whether the parties entered into an agreement to arbitrate their dispute, and the FAA requires the Court "to first determine that an arbitration agreement exists and, if so, whether it covers the dispute at issue." (Doc. 29 at 9-10, citing cases). She alleges that because it is clear that the dispute between Aerpio and Quaggin concerns "the interpretation or effect of the [CSA]," the dispute falls within the scope of the arbitration provision in the CSA and the Court must compel Aerpio to proceed to arbitration. (*Id*. at 10-11). Quaggin also argues that where, as here, the parties have contracted to settle their disputes by arbitration, the FAA mandates that the Court stay the arbitrable claims in litigation pending arbitration. (*Id*. at 11). Quaggin concludes in her motion that "the Court must direct Aerpio and

Dr. Quaggin to proceed to arbitration on the issues regarding the interpretation or effect of the [CSA]." (*Id.*).

Aerpio argues in response that the Court should deny Quaggin's motion because it includes no analysis to show the entire complaint falls within the terms of the CSA's arbitration provision. (Doc. 36). Aerpio alleges that none of its claims against the parties to this litigation are covered by the arbitration agreement in light of the narrow scope and terms of the agreement, the scope of Aerpio's complaint, and the relief Aerpio seeks, which an arbitrator purportedly cannot grant. (*Id.* at 10-12). Aerpio argues that Count I of the complaint is not covered by the arbitration agreement for three additional reasons. First, the alleged material breaches of the intellectual property (IP) assignment, conflict of interest, and confidentiality provisions of the CSA alleged against Quaggin relate to Quaggin's breach of the CSA, not the "interpretation or effect" of the CSA. (*Id.* at 15). Aerpio contends the parties do not disagree about the interpretation or effect of the terms of the CSA, which is the only arbitrable matter under the CSA. (*Id.*). Second, Aerpio contends that even if material breaches of §§ 1.6, 2, and 3 of the CSA related to the "interpretation or effect" of the CSA, these breaches were "specifically carved out of the arbitration provision." (*Id.*). Third, Aerpio asserts it cannot obtain the necessary relief through arbitration because "the crux of Aerpio's Complaint is the request that Quaggin and Mannin take all necessary steps to assign to Aerpio all applications containing claims relevant to VE-PTP," and an arbitrator cannot order Quaggin to provide this relief "where she has transferred away her rights in the applications to Mannin." (*Id.* at 15, 17).

Aerpio further argues that while Quaggin has not clarified whether she requests arbitration on any claims other than Count I, she also is not entitled to arbitration on her remaining claims. (*Id.* at 15-16). Aerpio contends those claims concern or implicate non-

signatories to the CSA who did not consent to arbitration. Aerpio asserts that even if Count I of the complaint were subject to arbitration, Quaggin has not met her "heavy burden" to show that a stay is warranted on Aerpio's remaining claims pending arbitration. (*Id*. at 18-22).

In reply, Quaggin argues that in deciding whether to compel arbitration, the Court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties, and (2) whether the agreement covers the parties' dispute. (Doc. 47 at 8). Quaggin alleges that these gateway issues can be delegated to the arbitrator where the parties "clearly and unmistakably" so provide. (Doc. 47 at 8, quoting *AT & T Techs., In. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Quaggin asserts that the CSA provides for arbitration under the auspices and rules of the American Arbitration Association (AAA), and this provision demonstrates "the parties agreed to arbitrate arbitrability by the terms of the arbitration provision."[2] (*Id*. at 9). Quaggin alleges that even if the Court finds the arbitration agreement is ambiguous on the arbitrability question, thereby leaving the arbitrability question for the Court, the Court should interpret the agreement as "granting arbitration coverage over 'all disputes' involving the 'interpretation' of the CSA." (*Id*. at 16-17, quoting cases).

## A. Plaintiff Aerpio's motion for leave to file a surreply (Doc. 53)

Plaintiff Aerpio seeks leave to file an omnibus surreply memorandum to address new arguments and new authorities that defendants have allegedly presented in their reply

---

[2] The Rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. . . ." (See R-7, 2018 WL 2117639, at *6).

memoranda, including in Quaggin's reply in support of her motion to compel/motion to stay. (Doc. 53). Aerpio contends that because a party "may not raise an issue for the first time in a reply brief," Aerpio should be granted leave to file a surreply to address the allegedly new arguments and authorities Quaggin presents in her reply. *See CBST Acq. LLC v. U.S.*, No. 1:18-cv-162, 2019 WL 688597, at *4 (S.D. Ohio Feb. 19, 2019) (Report and Recommendation)*, adopted,* 2019 WL 1125575 (S.D. Ohio Mar. 12, 2019) (declining to consider an argument raised for the first time in a reply brief) (citing *Books A Million, Inc. v. H & N Enterprises, Inc.*, 140 F. Supp. 2d 846, 859 (S.D. Ohio 2001) (citing in turn *Aetna Cas. and Sur. Co. v. Leahey Const. Co., Inc.*, 219 F.3d 519, 545 (6th Cir. 2000)).

Aerpio has submitted a proposed surreply with its motion for leave to file. (Doc. 53-1). Aerpio alleges in the proposed surreply that Quaggin presents five new arguments in her reply brief. Aerpio argues that Quaggin has waived the first argument, which alleges the Court has no power to decide if the parties' dispute is arbitrable, by failing to raise it in her motion to compel. (*Id*. at 3). Second, Aerpio contends that in her reply, Quaggin improperly relies on documentation which was not in the record when she filed the original motion and which she did not address in the motion, even though the evidence was available to her. (*Id*. at 3-4). Third, Aerpio argues that in response to its argument regarding the impossibility of obtaining through arbitration the equitable relief Aerpio seeks, Quaggin has confused and created a "strawman" argument. (*Id*. at 4). Fourth, Aerpio contends that Quaggin did not address the issue of possible inconsistent results in decisions rendered by the arbitrator and the Court in her motion; she did not cite a case which she cited in her reply for the proposition that a stay is needed to avoid inconsistent results even when the arbitration will not be binding on other parties (*Borcherding Enterprises, Inc. v. Heritage Advisory Group of S. Indiana*, No. 1:06-cv-003, 2006 WL 8441557,

at *1 (S.D. Ohio July 12, 2006); and Quaggin omitted pertinent case history from her reply by failing to note that the stay issued in *Borcherding* was lifted the next month because the Court found that the central issue in the case would not be resolved in an arbitration involving fewer than all of the parties. (Doc. 53 at 4-5). Fifth, Aerpio contends that after arguing in its opposing memorandum that Quaggin bears a "heavy burden" to show a stay would not prejudice Aerpio and that Quaggin would clearly face inequity and hardship in going forward, Quaggin erroneously sought in her reply to shift her "heavy burden" to Aerpio to show harm or prejudice, despite failing to discuss these matters in her original motion.

Local Civil Rule 7.2(a) provides that only supporting, opposing, and reply memoranda may be filed "except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(1), (2). Further, under the Local Rules, if a party will be relying on "proof of facts not already of record," the evidence which demonstrates the existence of those facts must be "submitted no later than[] the primary memorandum of the party relying on such evidence." S.D. Ohio Local Rule 7.2(d).

Local Rule 7.2(a) does not define "good cause" for filing any additional memoranda. *Comtide Holdings, LLC v. Booth Creek Mgt. Corp.*, No. 2:07-cv-1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct. 19, 2010). Generally, good cause exists where the reply brief raises new grounds that were not included in the movant's initial motion. *Id.* (citing as examples *Power Marketing Direct v. Moy,* No. 2:08-cv-826, 2008 WL 4849289 (S.D. Ohio Nov. 6, 2008); *cf. White v. Honda of America Mfg., Inc.,* 191 F. Supp. 2d 933, 944 (S.D. Ohio 2002) (finding the mere fact that a surreply might be "helpful" is not enough to justify its filing)). *See also Laws v. Stevens Transport, Inc.,* No. 2:12-cv-544, 2013 WL 4510395, at *2 (S.D. Ohio Aug. 23, 2013) (quoting *Koch v. County of Franklin,* No. 2:08-cv-1127, 2010 WL 2386352, at *4 (S.D. Ohio

June 10, 2010) (quoting in turn *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (citation omitted) (district courts "routinely" grant motions to file a surreply when a party is "unable to contest matters presented to the court for the first time" in the last regular pleading)). "Because [l]itigation by ambush is disfavored, fairness favors the surreply" in a situation where new grounds for a motion are first raised in the reply. *Laws*, 2013 WL 4510395, at *2. Thus, this Court has granted leave to file a surreply where the defendants first challenged the sufficiency of the plaintiff's pleadings under the substantive law of another state, but in their reply they first argued that the plaintiff's complaint was insufficient under Ohio tort law. *Travelers Prop. Cas. Co. of Am. v. Liebert Corp.*, No. 2:18-cv-367, 2018 WL 4604292, at *2-3 (S.D. Ohio Sept. 25, 2018).

A different result is warranted when the opposing party knew or should have known at the time it filed its responsive memorandum that a matter had been placed in issue, but the party did not make its arguments and submit its proof at that time. Allowing a party to submit a surreply under these circumstances would give the party "the proverbial 'second bite at the apple.'" *Comtide Holdings*, 2010 WL 4117552, at *3-4. A party is not entitled to a second chance to make its case, and good cause for filing a surreply is typically lacking, where a party seeks only to "correct mischaracterizations and to explain the new cases" cited in a reply memorandum. *Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours and Co.*, No. 2:09-cv-1081, 2014 WL 12651139, at *2 (S.D. Ohio Oct. 31, 2014) (citing *Bishop v. Children's Ctr. For Developmental Enrichment*, No. 2:08-cv-766, 2011 WL 5506105, at *2 (S.D. Ohio Nov. 10, 2011) ("Plaintiffs' desire to correct mischaracterizations and to explain the new cases upon which Defendants rely [] is not necessary nor does it constitute good cause to file a sur-reply.")). Where a party makes no new arguments in a reply memorandum but simply cites several cases

for the first time in support of arguments the party previously made, good cause to file a sur-reply is lacking. *Bishop*, 2011 WL 5506105, at *2.

The Court will grant Aerpio leave to file its surreply in connection with defendant Quaggin's motion to compel arbitration/motion to stay proceedings only with respect to the first issue Aerpio addresses in its proposed surreply; i.e., whether the Court has the power to decide if the parties' dispute is arbitrable. Quaggin did not raise this issue in her motion to compel arbitration/stay proceedings, which she filed on January 2, 2019. (Doc. 29). She argued in her motion that *the Court* makes the determination as to whether the parties entered into an agreement to arbitrate their dispute and that the FAA requires "*courts* to first determine that an arbitration agreement exists and, if so, whether it covers the dispute at issue." (Doc. 29 at 9-10, citing cases) (emphasis added). In her reply, Quaggin argues for the first time that "the parties agreed to arbitrate arbitrability by the terms of the arbitration provision," and she invoked both the AAA rules and case law interpreting agreements that incorporate those rules in support of her argument. (Doc. 47 at 9-10, 16-17). Quaggin also cited in her reply memorandum *Henry Schein, Inc. v. Archer and White Sales, Inc.*, -- U.S. --, 139 S. Ct. 524, 527 (2019), which post-dates Quaggin's original motion but reiterates long-established propositions of law; i.e., "the question of who decides arbitrability is itself a question of contract," and the FAA allows parties to contractually agree "that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein*, -- U.S. --, 139 S. Ct. at 527 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-944 (1995)). Neither party addressed in their original filing the issue of *who* had the contractual authority to decide the "question of

arbitrability."[3] - - the arbitrator or the Court. Each party's arguments in their original filings were premised on the assumption that the Court would interpret the CSA to determine if their dispute was arbitrable. Because Quaggin did not address this "threshold" issue in her motion or in response to arguments that Aerpio raised in its opposing memorandum, the Court will consider Aerpio's surreply insofar as it pertains to this issue.

The Court declines to consider Aerpio's surreply to the extent it relates to Aerpio's remaining arguments. Aerpio seeks through those arguments to respond only in order to "correct mischaracterizations" and explain new cases cited by Quaggin in her reply memorandum, which is not good cause to file a surreply. *Little Hocking Water Assn., Inc.*, 2014 WL 12651139, at *2; *Bishop,* 2011 WL 5506105, at *2. It is the Court's role to determine whether the parties before it have accurately presented the facts, the opposing parties' arguments, and the applicable propositions of law, or whether the parties have mischaracterized the facts, arguments, and legal propositions. *Bishop,* 2011 WL 5506105, at *2. The parties have adequately briefed their dispute to enable the Court to fulfill these functions.

Aerpio's motion for leave to file a surreply (Doc. 53) is **GRANTED** in part and **DENIED** in part with respect to Quaggin's motion to compel arbitration/motion to stay proceedings.

---

[3] "'Question of arbitrability' is a term of art covering disputes about whether the parties are bound by a given arbitration clause [i.e. formation] as well as disagreements about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy [i.e. scope]." *Armor All/STP Products Co. v. TSI Products, Inc.*, 337 F. Supp. 3d 156, 164 (D. Conn. 2018) (quoting *Schneider v. Kingdom of Thailand*, 688 F.3d 68, 71 (2d Cir. 2012)).

**B. Plaintiff Aerpio's motion to compel arbitration (Doc. 29)**

*1. The FAA*

The FAA allows for a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). *See also Epic Sys. Corp. v. Lewis*, -- U.S. --, 138 S.Ct. 1612, 1621 (2018). The FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Jefferis v. Hallrich Inc.*, No. 1:18-cv-687, 2019 WL 3462590, at *3 (S.D. Ohio July 31, 2019) (Report and Recommendation), *adopted*, 2019 WL 3975774 (S.D. Ohio Aug. 22, 2019) (quoting *Epic Sys. Corp.*, 138 S. Ct. at 1621) (emphasis in original) (quoting in turn *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)).

Before an unwilling party can be compelled to arbitrate, a determination must be made on the "gateway issues" of (1) "whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties," and (2) the arbitrability of specific claims, that is, whether "the specific [claim] falls within the substantive scope of that agreement." *Jefferis*, 2019 WL 3462590, at *3 (quoting *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Although courts ordinarily determine arbitrability, the FAA allows parties to an arbitration agreement to include a "delegation provision" in their agreement by which they agree that an arbitrator, rather than a court, will resolve "'gateway questions of 'arbitrability', such as whether the parties have agreed to arbitrate or whether their agreement covers a particular dispute," as well as the merits of the dispute. *Henry Schein*, - - U.S. - -, 139 S. Ct. at 529 (quoting *Rent-A-Center, West*, 561 U.S. at 68-69; *First Options of Chicago*, 514 U.S. at 943)). *See also De Angelis v. Icon Ent. Group Inc.*, 364 F. Supp. 3d 787, 792-93 (S.D. Ohio 2019).

"[T]he question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator," except if by their agreement "the parties clearly and unmistakably provide otherwise." *AT & T Techs., In. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

A "delegation provision" under which the parties agree to arbitrate "gateway questions of arbitrability" is governed by the FAA. *De Angelis*, 364 F. Supp. 3d at 793 (quoting *Rent-A-Center*, 561 U.S. at 68-69). Courts apply principles of contract interpretation to determine the parties' agreement. *Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-cv-145, 2019 WL 2291890, at *2 (E.D. Tenn. Jan. 11, 2019) (quoting *Rent-A-Center*, 561 U.S. at 70). The courts are bound to respect the parties' agreement on delegation of the arbitrability question as embodied in their contract. *Henry Schein*, - - U.S. - -, 139 S. Ct. at 531. *See also De Angelis*, 364 F. Supp. 3d at 794. If the parties have agreed "to let the arbitrator rule on his or her own jurisdiction, any other threshold questions about arbitrability must be submitted to the arbitrator, not this Court." *FCCI Ins. Co. v. Nicholas County Lib.*, No. 5:18-cv-038, 2019 WL 1234319, at *9-10 (E.D. Ky. Mar. 15, 2019). If the parties have contractually delegated the arbitrability question to the arbitrator, a court "may not decide" that question, even "if the argument seeking to enforce the delegation clause is 'wholly groundless.'" *Henry Schein*, - - U.S. - -, 139 S. Ct. at 529, 530.

Courts considering a motion to compel arbitration should "treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the nonmoving party." *Jefferis*, 2019 WL 3462590, at *3 (quoting *Great Am. Ins. Co. v. Gemma Power Sys., LLC*, No. 1:18-cv-213, 2018 WL 6003968, at *2 (S.D. Ohio Nov. 15, 2018) (quoting in turn *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)). *See also Ackison Surveying, LLC v. Focus Fiber Sols., LLC*, No.

2:15-cv-02044, 2016 WL 4208145, at *1 (S.D. Ohio Aug. 10, 2016) (citations omitted). To defeat the motion, the nonmovant has the burden to "show a genuine [dispute] of material fact as to the validity of the agreement to arbitrate." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)).

### 2. Gateway issues

The threshold issue presented by Quaggin's motion to compel arbitration is whether Aerpio and Quaggin agreed under the terms of the CSA that an arbitrator, rather than a court, will resolve "gateway questions of arbitrability," including the question of whether their agreement covers Aerpio's claims against Quaggin in this litigation. *See Henry Schein*, 139 S. Ct. at 526, 529. Quaggin argues in her reply memorandum that the CSA clearly delegates the power to decide whether a dispute falls within the scope of the delegation agreement to the arbitrator. (Doc. 47 at 9). Quaggin contends that the CSA does so by providing for arbitration "under the auspices and rules of the American Arbitration Association (AAA)." (Doc. 47 at 9, citing Doc. 1, Exh. B at 4, CSA, § 10). Quaggin alleges that an agreement to be bound by AAA rules, which expressly give arbitrators the power to decide whether a dispute falls within the scope of an arbitration agreement, clearly demonstrates that "'the parties agreed to arbitrate arbitrability by the terms of the arbitration provision.'" *Id.* (quoting *McGee v. Armstrong*, No. 5:11-cv-2751, 2012 WL 11010071, at *5 (N.D. Ohio Nov. 14, 2012) (quoting *Warren Steel Holding, LLC v. Williams*, No. 4:07-cv-1883, 2007 WL 2688240, at *3 (N.D. Ohio Sept. 11, 2007)). *See* Rule R-7(a), AAA Commercial Arb. Rules, 2018 WL 2117639, at *6 (giving arbitrators the power to rule on their own jurisdiction, including the arbitrability of claims).

In its surreply, Aerpio urges the Court to find that Quaggin waived the issue of whether "the parties unmistakably delegated the question of arbitrability to the arbitrators" by failing to raise it in her original motion to compel arbitration. (Doc. 53-1 at 3). Aerpio briefly addresses the substantive merits of Quaggin's argument by noting that the Supreme Court in *Henry Schein*, --U.S.--, 139 S. Ct. at 531, did not express a view "about whether the contract [which included language incorporating the AAA rules] in fact delegated the arbitrability question to an arbitrator." (*Id.* at 3, n.1).

The Court finds that defendant Quaggin did not waive the delegation of arbitrability issue. Although Quaggin did not raise the delegation issue until her reply, Aerpio sought and was granted an opportunity to address the issue by filing a surreply. It is imperative that the Court decide the delegation issue in order to determine the scope of its authority to interpret and enforce the parties' agreement. If the parties' contract delegates the question of arbitrability to an arbitrator, the Court "possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S.Ct. at 529. Thus, the Court will consider the threshold issue of whether the parties' CSA contains a delegation clause which "clearly and unmistakably" provides that "the parties agreed to arbitrate arbitrability." *AT&T Techs.*, 475 U.S. at 649.

The arbitration provision in the CSA, § 10, reads in its entirety as follows:

10. ARBITRATION: SPECIFIC PERFORMANCE

In the event there are any disputes in the interpretation or effect of this AGREEMENT, said disputes shall be resolved through binding arbitration to be held in Cincinnati, Ohio. Each party shall appoint one arbitrator, and these two arbitrators shall mutually agree upon a third arbitrator. Each party shall pay its attorney fees and personal costs associated with the arbitration, but, otherwise, the arbitration panel shall be empowered to force the unsuccessful party to pay all remaining costs associated with such arbitration. Except as provided herein, the

arbitration shall be held under the auspices and rules of the American Arbitration Association.

Notwithstanding the provisions of the foregoing paragraph, CONSULTANT acknowledges and agrees that due to the unique nature of AERPIO's business and Confidential Information, there can be no adequate remedy at law for any breach by CONSULTANT of the provisions of Section 1.6, 2 or 3, and that money damages would not be a sufficient remedy, for any such breach, which breach may result in irreparable harm to AERPIO, and therefore, that upon any such breach or any threatened breach, AERPIO shall be entitled to appropriate equitable relief, including, but not limited to, specific performance, restraining order, temporary injunction and/or permanent injunction, in addition to all other remedies it may have at law or in equity.

(Doc. 1, Exh. B at 6). Section 1.6 of the CSA is the invention assignment clause, which states in

pertinent part:

CONSULTANT shall disclose and hereby assigns to AERPIO as its exclusive property all Inventions and other technical or business innovations, and all Intellectual property and Intellectual property rights of any kind and nature relating thereto, developed, conceived or reduced to practice by CONSULTANT or its employees or contractors solely or jointly with others during the time period of CONSULTANT's engagement hereunder. . . .

(Doc. 1, Exh. B at 3).

Under Section 2, "Conflicts of Interest," Quaggin warranted "that [the CSA] will not

interfere or conflict with any other contractual obligation CONSULTANT may have." (Doc. 1,

Exh. B at 3).

Finally, Section 3 is a "Non-Disclosure" provision which states as follows:

CONSULTANT acknowledges that in the course of performing under [the CSA], CONSULTANT and CONSULTANT's employees and contractors may receive, develop, observe or have access to the confidential, proprietary and trade secret information of AERPIO as well as of any other companies which may be the subject of or involved in CONSULTANT's services and the performance of such services hereunder, which for purposes of this AGREEMENT shall be used in the ordinary sense and shall include all technical, personnel and business information of AERPIO and any such companies (collectively, "Confidential Information"). . . . . CONSULTANT agrees that CONSULTANT and its employees and contractors will treat all information received, observed or developed by it or them, or to which it or they have access, in the course of performing this AGREEMENT, as

18

Confidential Information. CONSULTANT agrees that CONSULTANT will maintain the Confidential Information in strict confidence and will not use, publish or otherwise disclose any Confidential information, either during or after [the CSA], without AERPIO's prior written consent. CONSULTANT acknowledges that the unauthorized disclosure of Confidential Information will irreparably damage AERPIO an[d]/or the related company, and that AERPIO is entitled to injunctive and equitable relief for a breach or threatened breach of [the CSA].

(Doc. 2, Exh. B at 3-4).

Quaggin relies on the language in the CSA that arbitration will be held "under the auspices and rules of the [AAA]" to argue the parties' agreement clearly and unmistakably delegates the arbitrability question to the arbitrator. (Doc. 47 at 9). The Court has considered the parties' agreement in light of the FAA and applicable caselaw. The Court finds that Aerpio and Quaggin clearly and unmistakably delegated the question of arbitrability to the arbitrator.

The most straightforward cases involving delegation clauses are those where the parties have explicitly formed an agreement, or incorporated into their agreement, provisions that vest the arbitrator with the power to decide issues of arbitrability. *See, e.g., Danley v. Encore Capital Group, Inc.,* 680 F. App'x 394, 398 (6th Cir. 2017) (quoting *Rent-A-Ctr.,* 561 U.S. 63) (the parties' arbitration agreement clearly delegated arbitrability to the arbitrator where the agreement "provided that it was for an arbitrator, not any other forum, to decide 'any dispute relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including . . . any claim that all or any part of this Agreement is void or voidable.'")). The two separate delegation provisions at issue in *Danley* provided that: (1) "[a]ll claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision"; and (2) "Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior

Cardmember Agreement." *Id.* at 398. The Sixth Circuit found that as in *Rent-A-Ctr.*, the parties

before the Court "'clearly and unmistakably' provided for an arbitrator to determine various

'gateway issues' relative to their claims," including claims regarding the applicability of the

arbitration agreement to their dispute. *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 69, 70 n.1).

Similarly, the Sixth Circuit in *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk*

*Assur. Co., Inc.,* 590 F. App'x 482, 484-85 (6th Cir. 2014), found that the parties "manifestly

intended to submit the threshold question of arbitrability to the arbitrator" by their use of the

following clear and unambiguous language in their agreement:

> It is the express intention of the parties to resolve *any* disputes arising under this
> Agreement without resort to litigation. . . .
>
> *Any* dispute or controversy that is not resolved informally . . . shall be fully
> determined . . . under the provisions of the American Arbitration Association.
>
> *All* disputes between the parties relating in any way to (1) the execution and
> delivery, construction or enforceability of this Agreement, (2) the management or
> operations of the Company, or (3) any other breach or claimed breach of this
> Agreement or the transactions contemplated herein shall be settled amicably by
> good faith discussion among all of the parties hereto, and, failing such amicable
> settlement, finally determined *exclusively* by binding arbitration in accordance with
> the procedures provided herein. The reference to this arbitration clause in any
> specific provision of this Agreement is for emphasis only, and is not intended to
> limit the scope, extent or intent of this arbitration clause, or to mean that any other
> provision of this Agreement shall not be fully subject to the terms of this arbitration
> clause. *All* disputes arising with respect to any provision of this Agreement shall be
> fully subject to the terms of the arbitration clause.
>
> The arbitration clause shall survive the termination of this Agreement and be
> deemed to be an obligation of the parties which is independent of, and without
> regard to, the validity of this Agreement.

*Id.* at 484. *See also Hubbell v. NCR Corp.*, No. 2:17-cv-807, 2018 WL 3008489, at *1 (S.D.

Ohio June 14, 2018) (where the plaintiff did not specifically challenge the arbitration provision,

by which the agreed that '[a]ny issue or dispute concerning the interpretation or enforceability of

this Agreement shall be resolved by the arbitrator,'" issues about the enforceability of the

contract had to be resolved by an arbitrator) (citing *Rent-A-Ctr.*, 561 U.S. at 72; *Danley*, 680 F. App'x at 398)); *Mitchell v. EEG, Inc.*, No. 3:15-cv-00903, 2016 WL 2903286, at *1 (W.D. Ky. May 18, 2016) (the parties' agreement "to arbitrate any dispute over the 'interpretation, enforceability, performance, breach, termination, or validity' of the [parties'] agreement" was a "delegation clause [which] is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Wynn v. Five Star Quality Care Tr.*, No. 3:13-cv-01338, 2014 WL 2560603, at *2, *7 (M.D. Tenn. June 5, 2014) (court found the "Delegation Provision" in the parties' agreement, which provided that "[a]ll challenges to the enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement," to be a "'clear and unmistakable' delegation of [] threshold issues, which include the plaintiffs' enforceability challenges, to the arbitrator") (citing *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 485 F. App'x 821, 823 (6th Cir. 2012) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration?") (quoting *First Options*, 514 U.S at 938); *Rai v. Ernst & Young, LLP*, No. 09-13194, 2010 WL 3518056, at *4-*5 (E.D. Mich. Sept. 8, 2010); *Muhammad v. Advanced Servs., Inc.*, No. 09-2573, 2010 WL 3853230, at *5 (W.D. Tenn. Aug. 24, 2010)).

The overwhelming majority of federal courts to have addressed the issue have also held that an agreement by parties that their disputes shall be resolved by arbitration in accordance with the Rules of the AAA is "clear and unmistakable" evidence that the parties intended to submit the question of arbitrability to the arbitrator. *See infra.* The Rules of the AAA include a provision that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction [i.e.,

arbitrability], including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Rule R-7(a), AAA Commercial Arb. Rules, 2018 WL 2117639, at *6. Thus, parties can "clearly and unmistakably" agree to delegate arbitrability to the arbitrator by providing in their agreement that all disputes shall be resolved by arbitration in accordance with the rules of the AAA, without including explicit language to the effect of "we [the parties] agree to arbitrate arbitrability." *See, e.g., Book Depot Partn. v. Am. Book Co.*, No. 3:05-cv-163, 2005 WL 1513155, at *3 (E.D. Tenn. June 24, 2005).

Numerous courts within the Sixth Circuit have reached this conclusion and have held that "when a contract requires arbitration pursuant to AAA Rules - which expressly give the question of arbitrability to the arbitrator - 'it clearly and unmistakably vests the arbitrator, and not the district court, with authority to decide which issues are subject to arbitration.'" *Bishop*, 692 F. Supp. 2d at 769 (collecting cases). *See also Pitino v. Adidas Am., Inc.*, No. 3:17-cv-639, 2018 WL 3865408, at *2 (W.D. Ky. Aug. 14, 2018); *Bowden v. Delta T Corp.*, No. 06-345, 2006 WL 3412307, at *7 (E.D. Ky. Nov. 27, 2006); *Morsey Constructors, LLC v. Burns & Roe Enters., Inc.*, No. 5:08-cv-23, 2008 WL 3833588, at *4 (W.D. Ky. Aug. 13, 2008) ("agreeing to settle contract disputes according to the rules of the AAA provides a 'clear and unmistakable' delegation of scope-determining authority to an arbitrator") (citation omitted); *Electrolux Home Prod., Inc. v. Mid-South Elec., Inc.*, No. 6:07-cv-016, 2008 WL 3493466, at *6 (E.D. Ky. Aug. 11, 2008) (applying arbitrability delegation principle *sua sponte*).

The majority of federal circuit courts to have considered this issue have also decided that "an arbitration provision's incorporation of the AAA Rules - or other rules giving arbitrators the authority to determine their own jurisdiction - is a clear and unmistakable expression of the

parties' intent to reserve the question of arbitrability for the arbitrator and not the court." *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (citing *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006), *abrogated on other gds. by Henry Schein*, - - U.S. - -, 137 S.Ct. 154; *Terminix Int'l Co. v. Palmer Ranch LP,* 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir. 2005) ("when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Apollo Computer, Inc. v. Berg,* 886 F.2d 469, 472-73 (1st Cir. 1989); *but see Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 780 (10th Cir. 1998) (finding that the parties did not specifically intend to submit the question of arbitrability to an arbitrator despite a reference to the AAA Rules in the arbitration provision)). *See also Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," except for the Tenth Circuit in *Riley Mfg.,* 157 F.3d 775); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,* 687 F.3d 671, 675 (5th Cir. 2012) ("We agree with most of our sister circuits that the express adoption of [the AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

Arbitration agreements that include a "carve-out" provision, which excludes certain matters from the arbitration agreement, present a closer question regarding the parties' intent to submit the question of arbitrability to the arbitrator. *See, e.g., Armor All/STP Products Co. v. TSI Products, Inc.*, 337 F. Supp. 3d 156 (D. Conn. 2018); *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280 (5th Cir. 2019); *Manlove,* 2019 WL 2291890, at *2. Whether the

parties have delegated the question of arbitrability under an agreement which requires their disputes to be decided by an arbitrator under the AAA rules - but which also contains a carve-out provision - depends on the terms and nature of the carve-out.

Courts have held that where an arbitration clause expressly exempts specified claims or actions from arbitration, the parties' agreement does not evidence an unmistakable intent to delegate the question of arbitrability. The Fifth Circuit in *Archer and White Sales,* 935 F.3d 274, reached this conclusion based on an arbitration agreement providing that:

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [the predecessor]), shall be resolved by binding arbitration *in accordance with the arbitration rules of the American Arbitration Association.*

*Id*. at 280 (emphasis in the original). The Fifth Circuit found that while it was undisputed that the parties' agreement incorporated the AAA rules, thereby "delegating the threshold arbitrability inquiry to the arbitrator for at least some category of cases," the parties disputed the "relationship of the carve-out clause - exempting actions seeking injunctive relief - and the incorporation of the AAA rules." *Id*. The plaintiff argued there was "no clear and unmistakable evidence that the parties delegated arbitrability disputes to an arbitrator"; rather, "the AAA rules (and resulting delegation) only apply to disputes that fall outside of the arbitration clause's carve-out for actions seeking injunctive relief." *Id*. at 279. The Court found that under this reading, "if a case falls within the carve-out, the agreement does not incorporate the AAA rules and the gateway arbitrability question is not delegated to an arbitrator." *Id*. The defendants argued that because the parties' agreement incorporated the AAA rules, the Court's inquiry was at an end and the "carve-out for actions seeking injunctive relief does not trump the parties' delegation." *Id*.

The Court found that the language of the agreement did not unambiguously delegate arbitrability. *Id*. at 281. The Court reasoned:

> The most natural reading of the arbitration clause at issue here states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules. The plain language incorporates the AAA rules - and therefore delegates arbitrability - for all disputes *except* those under the carve-out. Given that carve-out, we cannot say that the Dealer Agreement evinces a "clear and unmistakable" intent to delegate arbitrability.

> We are mindful of the Court's reminder that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." But we must also heed its warning that "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" The parties could have unambiguously delegated this question, but they did not, and we are not empowered to re-write their agreement.

*Id*. at 281-82 (citations omitted).

In reaching its decision in *Archer and White*, the Court considered the Second Circuit's decision in *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014), a case involving an arbitration clause which incorporated the AAA rules and explicitly exempted certain claims from arbitration. The agreement in *NASDAQ* provided as follows:

> A. Except as may be provided in the NASDAQ OMX Requirements, all claims, disputes, controversies, and other matters in question between the Parties to this Agreement and the Parties' employees, directors, agents and associated persons arising out of, or relating to this Agreement, or to the breach hereof, shall be settled by final binding arbitration in accordance with this Agreement and the following procedure or such other procedures as may be mutually agreed upon by the Parties.

> B. Except as otherwise provided herein or by agreement of the Parties, any arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association or in accordance with such other rules and procedures as are agreed to by the Parties.

*NASDAQ*, 770 F.3d at 1016. The *NASDAQ* Court held that the parties had "not clearly and unmistakably delegated arbitrability" there given that "a broad arbitration clause [wa]s subject to

a qualifying provision that at least arguably cover[ed] the present dispute." *Archer and White Sales*, 935 F.3d at 281 (quoting *NASDAQ*, 770 F.3d at 1031). Because the NASDAQ parties' dispute "arguably fell within the carve-out," whether they intended to have arbitrability decided by an arbitrator was ambiguous. *Id*. (citing *NASDAQ*, 770 F.3d at 1031). Thus, the arbitrability question in *NASDAQ* was for the court to decide. *Id*.

The district court in *Armor All/STP Products Co. v. TSI Products, Inc.*, 337 F. Supp. 3d 156, 164-66 (D. Conn. 2018), reached this same result based on a broad arbitration provision and a carve-out clause. The arbitration provision at issue in *Armor* provided that "the only mechanism to settle any dispute, controversy, or claim arising out of or relating to this Agreement shall be . . . binding arbitration . . . in accordance with the Rules of the [AAA]." *Id*. at 162. The arbitration provision included a carve-out clause, which provided that the parties' agreement to settle any such matter by binding arbitration was "[s]ubject to § 7.1 of this Agreement." *Id*. at 162. Section 7.1 provided that the plaintiff's predecessor "shall be entitled to full injunctive relief, *to be issued by any competent court of equity*" in the event the defendant should "engage in or perform, either directly or indirectly," any acts that violated specified contractual obligations. *Id*. at 164 (emphasis added). The relief sought in the case included permanent injunctive relief to enjoin the defendants from infringing on the plaintiff's marks and unfairly competing with the plaintiff, which the Court found that this relief "arguably" fell within the carve-out for injunctions. *Id*. at 167. The Court found it was doubtful that the parties intended to have an arbitrator first decide "the arbitrability of disputes that arguably implicated the need for such relief." *Id*. The Court reasoned that purpose of the injunctive relief contemplated by the agreement was to enable plaintiff to "prevent or put a prompt end to unauthorized disclosures of its proprietary information," and it was not consistent with that

purpose to require the parties to go before an arbitrator "who would lack the power to afford such prompt equitable relief." *Id*. At the very least, the Court found that the issue was "debatable" and that the defendants had "not borne their burden of showing that the parties clearly and unmistakably delegated the decision concerning arbitrability to the arbitrator." *Id*.

Courts have reached a different result where an agreement binds the parties to submit any dispute to arbitration in accordance with the Rules of the AAA, but there is a carve-out clause which does not explicitly exempt matters before the court from the arbitration requirement. In those cases, courts have held that the carve-out clause does not create any ambiguity as to the parties' intent to delegate arbitrability. Thus, the Court in *Archer and White Sales* distinguished its earlier decision in *Crawford Prof. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014), which involved an arbitration agreement and carve-out provision that is analogous in material respects to the arbitration provision and clause in the CSA. The arbitration agreement in *Crawford* "incorporated the AAA Rules and also contained a carve-out that nothing in the arbitration provision 'shall prevent either party from seeking injunctive relief for breach of th[e Agreement].'" *Id*. The agreement provided that:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the [AAA]. The arbitrator must follow the rule of Law, and may only award remedies provided for in the Provider Agreement. . . . . Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; provided, however, that *nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law*. . . .

*Crawford Prof. Drugs*, 748 F.3d at 256 (emphasis added). Without specifically discussing the carve-out provision, *Crawford* held that in light of the express incorporation of the AAA rules,

there was "clear and unmistakable evidence that the parties to the [] Agreement agreed to arbitrate arbitrability." *Id.* at 263.

The Fifth Circuit in *Archer and White Sales* distinguished a Ninth Circuit case which interpreted an arbitration clause (1) adopting arbitration rules that delegated arbitrability issues to the arbitrator, and (2) containing a carve-out for certain intellectual property and licensing claims. *Archer and White Sales,* 935 F.3d at 280 (citing *Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1073 (9th Cir. 2013)). The arbitration clause in *Oracle* provided:

> Any dispute arising out of or relating to this [Source] License shall be finally settled by arbitration as set out herein, except that *either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to Your Compliance with the TCK license. . . .*

*Oracle,* 724 F.3d at 1071 (emphasis added). The *Oracle* Court held that incorporation of the arbitration rules was "clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability," and the carve-out clause did not give the district court exclusive jurisdiction to decide the arbitrability of claims covered by the clause. *Id.* at 1075. Rather, the Ninth Circuit reasoned that:

> Because the claims carved-out by [the arbitration] agreement "ar[ose] out of or relat[ed] to" the Source License, and the agreement explicitly provided that any claim arising out of the Source License was subject to arbitration, . . . Oracle's carve-out argument "conflate[ed] the *scope* of the arbitration clause . . . with the question of *who* decides arbitrability.

*Id.* at 281 (quoting *Oracle,* 724 F.3d at 1075-76).[4]

The district court in *Armor,* 337 F. Supp. 3d 156, 165-166, distinguished cases similar to *Crawford* and *Oracle* where the parties were found to have delegated arbitrability, despite a

---

[4] The Ninth Circuit in *Oracle* distinguished a Sixth Circuit case which was abrogated by the Supreme Court's decision in *Henry Schein,* - - U.S. - -, 139 S. Ct. 524: *Turi v. Main St. Adoption Servs., LLP,* 633 F.3d 496, 511 (6th Cir. 2011).

carve-out provision in their agreement, because the carve-out provision obviously "did not apply to the issue at hand." *Id.* (citing, *e.g., Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 727-28 (E.D.N.Y. 2017) (question of arbitrability was delegated to the arbitrator where the arbitration clause excepted certain disputes from arbitration but explicitly provided that the arbitrator would decide "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision"); *Consol. Precision Prods. Corp. v. Gen. Elec. Co.*, No. 15-cv-8721, 2016 WL 2766662, at \*6 (S.D.N.Y. May 2, 2016) ("the parties' adoption of a 'limited exception' to arbitration for intellectual property claims was not applicable to dispute involving breach of contract and declaratory judgment claims not relating to intellectual property, and therefore [] arbitrability was a question for the arbitrator."). The Court in *Armor* found these authorities were not particularly helpful as the case before it presented a closer call. *Id.* at 166.

Finally, the district court in *Manlove*, 2019 WL 2291890, interpreted an arbitration agreement which provided that any claims relating to the plaintiff's employment must be submitted to mandatory arbitration, subject to specified exceptions. A carve-out clause in the agreement provided:

> Injunctive Relief. Nothing in this agreement shall be interpreted to prevent or restrict either party from seeking provisional injunctive relief, where appropriate, in a court of competent jurisdiction. Injunctive relief includes, but is not limited to, temporary and/or permanent injunctions or restraining orders.

*Id.*, at \*2. The agreement also included a broad delegation clause which gave the arbitrator "exclusive authority to resolve any Claims, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." *Id.* The plaintiff argued that because he sought only injunctive relief, which he was entitled to pursue in a court of

law, the arbitration agreement did not apply to his claims and they were not subject to mandatory arbitration. *Id.* The Court disagreed and found it was bound by prior Supreme Court decisions to reject plaintiff's argument. *Id.*, at *3 (quoting *AT & T Techs., Inc.*, 475 U.S. at 649; *Henry Schein*, --U.S.--, 139 S. Ct. 524). The Court held that because the parties had "'clearly and unmistakably provide[d]' that disputes over 'interpretation' and 'applicability' should be decided by the arbitrator," the Court had to compel arbitration to allow an arbitrator to "rule on the threshold issue of the arbitrability of claims for injunctive relief." *Id.*, at *3.

The arbitration agreement at issue in this case does not neatly align with any of the arbitration agreements interpreted in the above cases. Section 10 of the CSA includes broad and unqualified language that reflects the parties' agreement to submit "any disputes in the interpretation or effect of [the CSA] to binding arbitration. . . ." (Doc. 1, Exh. B at 6). This language is not ambiguous. Like many of the agreements discussed by the courts, the CSA also provides that arbitration "shall be held under the auspices and rules of the American Arbitration Association. . . ." (Doc. 1, Exh. B at 6, § 10). However, the arbitration provision qualifies application of the AAA Rules by stating the Rules will apply "[e]xcept as provided herein." (*Id.*). In addition, like many other arbitration agreements in the cases discussed above, the CSA includes a carve-out provision which reads:

> Notwithstanding the provisions of the foregoing paragraph, [Quaggin] acknowledges and agrees that . . . there can be no adequate remedy at law for any breach . . . of the provisions of Section 1.6, 2 or 3, and that money damages would not be a sufficient remedy, for any such breach, which breach may result in irreparable harm to AERPIO, and therefore, that upon any such breach or any threatened breach, AERPIO shall be entitled to appropriate equitable relief, including, but not limited to, specific performance, restraining order, temporary injunction and/or permanent injunction, in addition to all other remedies it may have at law or in equity.

(*Id.*). The question to be resolved is whether the parties rendered their agreement to arbitrate ambiguous by inclusion of these provisions.

The parties clearly agreed that *any* dispute in the interpretation or effect of the CSA was to be resolved through binding arbitration. The carve-out clause does not explicitly exempt claims for equitable relief from the requirement that the parties submit their disputes in the interpretation or effect of the CSA to arbitration for resolution. The arbitration agreement provides that Aerpio may be entitled to equitable relief for certain breaches or threatened breaches, but the CSA does not by its terms foreclose Aerpio from seeking that relief from an arbitrator. Further, Aerpio has not explained why it would be unable to obtain the relief authorized in the carve-out provision from an arbitrator.[5]

In somewhat comparable situations, where the parties have agreed to submit their disputes to arbitration but have expressly carved out some exception for claims for injunctive relief, courts have held that the carve-out clause does not create any ambiguity as to the parties' intent to delegate arbitrability. *See, e.g., Crawford Prof. Drugs,* 748 F.3d at 256 (the parties arbitration agreement incorporated the AAA Rules and also contained a carve-out that nothing in the arbitration provision "shall prevent either party from seeking injunctive relief for breach of this [] Agreement in any state or federal court of law. . . ."). The same conclusion is warranted here. Aerpio and Quaggin's agreement provides that Aerpio may be entitled to injunctive relief for certain breaches or threatened breaches of the CSA. But the carve-out provision does not require Aerpio to bring its claims for such relief before a court as opposed to an arbitrator. The

---

[5] The AAA Rules vest the arbitrator with authority to "take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods" (R-37); to grant "any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract" (R 47(a)); and "[i]n addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards" (R 47(b)). *See* 2018 WL 2117639, at *14-15, *18.

most closely analogous cases discussed *supra* support the conclusion that by incorporating the AAA rules into their arbitration agreement, Aerpio and Quaggin "clearly and unmistakably" agreed to submit any dispute as to arbitrability to the arbitrator, notwithstanding the carve-out provision concerning the availability of injunctive relief.

In sum, the CSA clearly and unmistakably reflects Aerpio and Quaggin's intent to delegate all "disputes in the interpretation or effect" of the CSA to the arbitrator. By providing that the parties will submit any such dispute to the arbitrator, and that the arbitration will be governed by the rules of the AAA, the parties' agreement delegates to the arbitrator all disputes, including the question of arbitrability. There are no provisions of the CSA which create ambiguity on the issue. Because the parties delegated the question of arbitrability to the arbitrator under the terms of their agreement, the gateway question of arbitrability must be submitted to an arbitrator.

Quaggin alleges that all claims presented against her in the complaint must be arbitrated. (Doc. 29 at 9). Quaggin contends that the entire complaint "is a dispute regarding the interpretation or effect of the [CSA], falling squarely with the scope of the arbitration provision." (*Id*. at 10). Quaggin contends that "at a minimum," Count I must be submitted to arbitration and the remaining claims against her should be submitted to arbitration because they depend on the same issues and facts. (Doc. 47 at 25). In accordance with the terms of the parties' CSA, an arbitrator must decide whether the arbitration agreement encompasses the claims against Quaggin raised in Aeprio's complaint, or whether the arbitration agreement does not cover Aerpio's dispute with Quaggin as Aerpio contends.

Therefore, defendant Quaggin's motion to compel arbitration of the claims against her is well-taken and should be granted.

32

## II. Defendant Quaggin's motion to stay proceedings (Doc. 29)

### 1. The parties' positions

Quaggin contends that a mandatory stay of Count I is required pending arbitration pursuant to 9 U.S.C. § 3, and all remaining counts of the complaint should be stayed pending arbitration of Count I so as to avoid duplicative proceedings and not vitiate the right to arbitrate.[6] (Doc. 29 at 11-17). Quaggin argues that whether the CSA has been breached presents a threshold question which must be decided in arbitration, and determination of this threshold question impacts Aerpio's remaining claims in the case, which are substantially premised on the CSA. (*Id.* at 17). Quaggin alleges it is clear that all claims in the litigation, including the claims brought against the non-signatories to the CSA, turn on the same issues raised against Quaggin in Count I because Aerpio characterizes Quaggin "as an agent of the University or an extension of Mannin" and does not attribute affirmative acts to these entities. (*Id.*). Quaggin argues that because all claims in this litigation are interrelated and turn on the same issue raised in Count I - "whether Dr. Quaggin made her discoveries because or independent of her access to Aerpio's HPTPβ inhibitors" - it would be inequitable to allow the litigation and arbitration to proceed on parallel tracks. (*Id.* at 12-17, citing *Geo Vantage of Ohio, LLC v. GeoVantage, Inc.*, No. 2:05-cv-1145, 2006 WL 2583379, at *12 (S.D. Ohio Sept. 6, 2006); *Vaughn v. Marshall*, No. 2:09-cv-00097, 2009 WL 3260382, at *2 (S.D. Ohio Oct. 8, 2009)). Quaggin alleges that inequity would result from allowing duplicative proceedings to continue because arbitration would be dispositive of the claims before the Court. (Doc. 29 at 14-15, citing *Geo Vantage of Ohio*, 2006

---

[6] Quaggin's assertion appears to be inconsistent with her allegation that all claims asserted against her in the litigation must be submitted to arbitration, which would render a stay of all claims against her mandatory pending arbitration. 9 U.S.C. § 3. There is no question, though, that the claims against Mannin and the University are not subject to arbitration and the Court must exercise its discretion as to whether to stay the claims against them pending arbitration.

WL 2583379, at *12; *Vaughn*, 2009 WL 3260382, at *2). Quaggin alleges in her reply that

Count I must be submitted to arbitration because it involves a dispute over interpretation of the

CSA; Counts II-IX against Quaggin should also be submitted to arbitration because they hinge

on the same issues and facts; and regardless, any claims not submitted to arbitration should be

stayed until the arbitration is completed. (Doc. 47 at 25).

Aerpio contends that even if Count I of the complaint must be arbitrated, a stay as to the

remaining counts of the complaint and the non-signatories to the CSA is not warranted. (Doc.

36). Aerpio acknowledges that the Court has the power to stay proceedings in its discretion. (*Id.*

at 17). However, Aerpio contends that even if Count I of the complaint were subject to

arbitration, Quaggin has not even attempted to meet the "heavy burden" she bears to show a

discretionary stay is warranted on the remaining counts. (*Id*. at 18). Aerpio contends that

Quaggin has not demonstrated that (1) a discretionary stay is "necessary," and (2) the stay will

not unduly prejudice Aerpio, the non-moving party. (*Id*. at 18-22, quoting *Asahi Glass Co., Ltd.*

*v. Toledo Engr. Co., Inc.*, 262 F. Supp. 2d 839, 845 (N.D. Ohio 2003) (citing *Sierra Rutile Ltd. v.*

*Katz,* 937 F.2d 743, 748 (2d Cir. 1991)). Aerpio alleges that instead, Quaggin has proffered an

incorrect standard for the imposition of a discretionary stay - i.e., whether the issues are

interrelated so that some claims to be decided in the arbitration would be dispositive of claims to

be decided by the Court. (*Id*., citing Doc. 29 at 12). Aerpio contends that Quaggin has fallen

short of her own erroneous standard.

Quaggin argues in reply that the claims against the University and Mannin are based on

the same core facts as the claims against her, and resolution of Aerpio's claim that Quaggin

breached the CSA would be dispositive of the remaining claims in the litigation. (Doc. 47 at 21-

23).[7] (*Id.*). At the same time, Quaggin asserts that a court judgment in Aerpio's favor and against Mannin on her claims for equitable relief would effectively determine the parties' contractual dispute, "rendering the parties' agreement to arbitrate that dispute a 'hollow formality.'" (*Id.* at 23, quoting *Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 412 (1976)). Quaggin argues that this risk of inconsistent or duplicative results favors a stay. Quaggin argues that Aerpio will not be substantially or irreparably harmed by a stay because Quaggin has not yet been issued a patent, and Aerpio cannot be granted inventorship in a pending patent application. (*Id.* at 24).

## 2. The applicable law

The FAA requires that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3; *see also Andrews v. TD Ameritrade, Inc.*, No. 1:13-cv-2811, 2014 WL 1761562, at *4 (N.D. Ohio May 1, 2014), *aff'd*, 596 F. App'x 366 (6th Cir. 2014). Where the district court concludes that some, but not all, of the claims in an action are subject to arbitration, it has discretion in determining "whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also Geo Vantage of Ohio*, 2006 WL 2583379, at *12 (whether to grant a stay of the remainder of the case is within the district court's discretion) (citing *Jewell v. Davies*, 192 F.2d 670, 672-73 (6th Cir. 1951)).

This Court has held that a movant for a stay bears "the heavy burden of showing a discretionary stay is necessary, and the stay should not prejudice the non-moving litigant

---

[7] Quaggin also references pre-complaint correspondence for the first time in her reply, which is not appropriately considered in connection with her motion. (*See* Doc. 47 at 22-23).

unduly." *Ackison Surveying,* 2016 WL 4208145, at *2 (quoting *Vaughn,* 2009 WL 3260382, at *2) (movant seeking a stay bears "the heavy burden of showing a discretionary stay is necessary, and the stay should not prejudice the non-moving litigant unduly")). *See also Ohio Envtl. Council v. U.S. Dist. Ct.,* 565 F.2d 393, 396 (6th Cir. 1977) (the movant must show a "pressing need" for the delay from arbitration, and if there is even a "fair possibility" that the stay will harm the non-moving litigant, the movant must then "make out a clear case of hardship or inequity in being required to go forward"); *Asahi Glass,* 262 F. Supp. 2d at 845 (same) (citing *Sierra Rutile Ltd.,* 937 F.2d at 750 (it is appropriate for the district court to exercise its inherent powers to grant a stay "where the pending proceeding is an arbitration in which the issues involved in the case may be determined"; the district court must "tailor its stay so as not to prejudice the non-moving litigant unduly" if issues resolved in arbitration may be determinative of issues in the case; and "the movant bears a heavy burden of showing necessity for the stay"). The Court "must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Vaughn,* 2009 WL 3260382, at *2 (quoting *Ohio Envtl. Council,* 565 F.2d at 396) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254-55 (1936)).

A relevant consideration in the court's exercise of its discretion is the similarity between the factual allegations and claims to be arbitrated and litigated, and how closely intertwined the claims are. *See, e.g., Vaughn,* 2009 WL 3260382, at *4 (the Court considered that the issues in both the arbitration and in the litigation were related to the interpretation of the arbitrable agreement and whether it had been breached, and the decision on the plaintiff's breach of contract claim against the defendant's business would significantly affect the defendant's potential for liability); *Patnik v. Citicorp Bank Tr. FSB,* 412 F. Supp. 2d 753, 763 (N.D. Ohio

2005) ("In light of plaintiffs allegations and admissions that the claims against the remaining defendants are 'inextricably intertwined' with the claims against the defendant that controlled the accounts, . . . this factor weighs heavily in favor of a stay," as did considerations of efficiency given that resolution of the claims against the defendant in arbitration might be dispositive of the remaining claims); *Kirsch v. Dean*, No. 3:16-cv-00299, 2017 WL 7000276, at *2-3 (W.D. Ky. Apr. 3, 2017) (relevant factor in granting stay was the "significant overlap" between the plaintiff's claims which, though they involved two different entities, were almost identical and involved the same factual allegations). *Cf. Canter v. Calderhead, Lockemeyer & Peschke Law Office*, No. 1:13-cv-514, 2014 WL 64155, at *3 (S.D. Ohio Jan. 8, 2014) (stay was issued pending a ruling in state court that could "resolve many, if not all, of the legal and factual issues raised by plaintiff's complaint").

In determining whether a discretionary stay of litigation pending arbitration is warranted, courts in the Sixth Circuit have also applied the four-factor analysis that guides a court's inherent discretion for staying litigation pending resolution of the same or related issues in another forum: "(1) the potentiality of another case having a dispositive effect on the case to be stayed, (2) the judicial economy to be saved by waiting on a dispositive decision, (3) the public welfare, and (4) the hardship/prejudice to the party opposing the stay, given its duration." *Bounty Minerals, LLC v. Chesapeake Expl., LLC*, No. 5:17-cv-1695, 2017 WL 5971699, at *3 (N.D. Ohio Dec. 1, 2017) (quoting *Michael v. Ghee*, 325 F. Supp. 2d 829, 831 (N.D. Ohio 2004) (citing in turn *Landis,* 299 U.S. at 254-55).

A court has discretion to stay claims against non-signatories pending the outcome of arbitration between the parties to the arbitration agreement. *Patnik*, 412 F. Supp. 2d at 762 (citing *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 20 n. 23). "A stay is justified when a lawsuit

against a non-signatory depends upon the same facts, and is inherently inseparable from, the arbitrable claims." *Id.* at 762 (quoting *Hill v. GE Power Sys., Inc.,* 282 F.3d 343, 347 (5th Cir. 2002)). Another factor to be considered is "whether an independent action against the nonsignatories would involve significant expense and inconvenience." *Id.* (quoting *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 76 (2d Cir. 1997)). *See also Anderson v. Delta Funding Corp.,* 316 F. Supp. 2d 554, 568 (N.D. Ohio 2004) (finding that while the plaintiff's claims against one defendant were not subject to an arbitration agreement between the plaintiff and the remaining defendants, the claims were "inextricably intertwined" so that a stay was warranted in the interests of judicial economy and in light of the federal policy favoring arbitration); *Asahi Glass Co.,* 262 F. Supp. 2d at 844-45 (citing *AgGrow Oils LLC v. Nat'l Union Fire Ins. Co.,* 242 F.3d 777, 782 (8th Cir. 2001)).

This Court in *Vaughn* considered (1) whether a discretionary stay was necessary, and (2) whether a stay would unduly prejudice the non-moving litigant. 2009 WL 3260382, at *3-5. The Court found a stay was warranted because it was apparent the plaintiffs were alleging some of the same unlawful conduct against both the defendant in the litigation and the defendant's business in the arbitration; the plaintiffs were seeking compensation for the same wrongdoing; issues raised in the litigation would possibly be determined in the pending arbitration; the issues in both the arbitration and the litigation related to the interpretation of the plaintiffs' contract with the defendant's business and whether the agreement had been breached; and the decision as to whether the defendant's business had breached the contract would significantly affect the individual defendant's potential for liability. *Vaughn,* 2009 WL 3260382, at *4. The Court concluded that "because the claims against [the defendant's business] are intertwined with the claims against [the defendant], and because some of the damages sought are the same, it would

be an inefficient and duplicative use of time and effort for this Court and the litigants if the parties are required to proceed in two forums at once." *Id.* The Court also found that a stay would not unduly prejudice the non-moving litigants because the plaintiffs would not be denied their ability to recover from the defendant as a result of the delay, and plaintiffs could proceed with discovery in the arbitration proceedings. *Id.*

In *Kirsch*, 2017 WL 7000276, at *2-3, the Court exercised its discretion to issue a stay even though the plaintiff's claims and the defendant's counterclaims were not subject to the arbitration agreement and two separate entities were involved in the proceedings. The Court nonetheless found that the claims "implicate[d] the same factual and legal dispute that the court sent to arbitration," and the plaintiff's claims involving the two entities were "almost identical and involve the same factual allegations." *Id.* Because there was "significant overlap" in the plaintiff's claims, the disposition of her claims involving one party in the arbitration could affect her claims involving another party in the litigation. *Id.* (citing *Fellowship v. Chesapeake Energy Corp.*, No. 4:15-cv-02275, 2016 WL 5661607, at *10 (N.D. Ohio Sept. 29, 2016)). The Court found the potential that an arbitrator's decision could moot the plaintiff's claims as to the party before the court, or lead to inconsistent verdicts, outweighed the delay in the resolution of the case that a stay could cause. *Id.*

In *Fellowship*, 2016 WL 5661607, the Court issued a discretionary stay in one of several class actions brought in different tribunals on behalf of overlapping groups of the same plaintiffs, by the same plaintiffs' counsel, and premised on the same basic claim that the defendants had underpaid royalties due under oil and gas leases. *Id.*, at *1. The Court exercised its inherent discretion to stay the case as to those parties whose leases did not include arbitration provisions, while granting a mandatory stay as to those cases involving defendants whose leases had

arbitration provisions. *Id.*, at *10. The Court found a discretionary stay was warranted because the "facts, parties, and counsel in this litigation and the related litigation significantly overlap," and the court was not convinced that the disposition of the related litigation would have no effect on the litigants' claims in the case before it. *Id.*

The Court exercised its discretion to stay proceedings against non-signatories to an agreement pending arbitration in *U.S. ex rel. Tesar Indus. Contractors, Inc. v. Turner Const. Co.*, No. 1:09-cv-1477, 2009 WL 3626696, at *4-5 (N.D. Ohio Oct. 29, 2009) (citing cases). The Court found a stay pending arbitration between the plaintiff and a subcontractor was needed to avoid any potential prejudice to the plaintiff on its claims against other defendants which arose out of the same subcontractor relationship, and it was appropriate to stay the claims against these other defendants arising out of that relationship.

In contrast, this Court in *Ackison Surveying,* 2016 WL 4208145, at *2-3, found that a stay was not warranted where the claims in the pending arbitration proceedings did "not touch on the same claims" that the plaintiff brought in its complaint; the facts and circumstances in both proceedings were not sufficiently similar because the arbitration did not involve plaintiff's claims of unjust enrichment, alter/ego veil piercing, and violation of Ohio's Prompt Pay Act; the defendants alleged that the plaintiffs had inadequately performed work on two different projects whereas plaintiff alleged in the complaint that defendants failed to pay for work performed on only one project; and the parties sought different damages in the two proceedings. The Court concluded that rather than being duplicative, the litigation presented "questions of law and fact independent of the arbitration proceeding," and a stay was not necessary "[b]ecause the claims are not sufficiently intertwined." *Id.*, at *3. The Court further found that a stay would prejudice

the plaintiff "because it would unduly delay Plaintiff's ability to recover on damages and claims that are unrelated to those in the arbitration proceeding." *Id.*

The district court concluded that a stay was not warranted under the four-factor analysis for staying litigation in *Bounty Minerals, LLC*, 2017 WL 5971699, at *4. The Court determined that consideration of the relevant factors, coupled with how arbitration had actually been pursued in that case, counseled against staying the action. The Court found that the arbitration involved a lease that was no longer part of the lawsuit before the court and an arbitration ruling would not be dispositive of any matter before the court, so that the loser in arbitration was not prevented from advocating for a different result in federal court. *Id.*, at *4. Second, the factor of judicial economy weighed only slightly in favor of a stay because regardless of the outcome in arbitration, some individualized discovery would have to be conducted on the separate leases at issue. *Id.* The third factor was neutral because the leases involved arms-length contractual agreements between private parties. *Id.* Finally, a decision in arbitration in the near future was unlikely based on some unique matters of dispute surrounding the private arbitration, which posed a potential hardship to the plaintiff. *Id.*

### 3. A stay is warranted

As discussed *supra*, Aerpio and Quaggin agreed in the CSA that an arbitrator would decide the question of arbitrability, or what matters are "disputes in the interpretation or effect of" the CSA and as such must be submitted to arbitration. This matter must therefore go before an arbitrator for a determination of the question of arbitrability before litigation can proceed on any claims against Quaggin which can potentially be characterized as "disputes in the interpretation or effect" of the CSA. Aside from the claims against Quaggin, Aerpio brings several claims against the University and Mannin, neither of whom agreed to arbitrate their

disputes with Aerpio by signing the CSA. The Court must therefore determine whether such claims against these non-signatories to the CSA should be stayed pending conclusion of the arbitration.

The Court finds that a discretionary stay is necessitated by the close relationship between the parties and the claims, the similar factual allegations underlying the claims, and the possibility of inconsistent results if arbitration and this litigation were to proceed at the same time. It is clear from the allegations of the complaint that the claims in this lawsuit are inextricably intertwined. The claims against each defendant relate to the same IP and other confidential and proprietary information and material of Aerpio. (Doc. 1, ¶¶ 38, 43, 47, 49). Aerpio's IP and confidential and proprietary information and material is the subject of both the CSA and the MTA. Both agreements impose similar obligations on Quaggin. Under both the CSA and MTA, Quaggin was required to disclose to Aerpio any intellectual property developed during the term of the engagement or related to Aerpio's materials; to assign to Aerpio as its exclusive property all inventions, innovations, and intellectual property developed during the term of the engagement (CSA) or, together with the University, to use Aerpio's material solely for the project and no other purposes, and to notify Aerpio of decisions related to certain patent applications, giving Aerpio the right to file or maintain the application or patent; to treat all information obtained in the course of performing the agreement as confidential and not use it without Aerpio's consent; and to not transfer or distribute any material or information about the material to a third party outside of Quaggin's laboratory without Aerpio's written consent (MTA). (*Id.*, ¶¶ 44, 51).

Further, Aerpio alleges that Quaggin breached both the CSA and MTA through similar acts and omissions. Aerpio's claims for breach of contract alleged under both Count I and Count

II present issues as to whether Quaggin failed to disclose intellectual property, inventions, discoveries or developments to Aerpio or the University; whether Quaggin improperly assigned patent applications to Mannin; whether Quaggin breached her warranty that the CSA would not interfere with or conflict with any other contractual obligation; and whether Quaggin failed to obtain Aerpio's prior consent before she disclosed confidential information to Mannin and the public. (*See* Doc. 1). Aerpio's remaining claims are either alternative claims to its claims for breach of the CSA and MTA which implicate Mannin (Count III, tortious interference with contractual relations, Count VI, *quantum meruit*) or otherwise relate to Aerpio's allegations that it provided to Quaggin, and in turn Mannin, valuable information and material regarding VE-PTP inhibitors and their use; that Quaggin was required to assign to Aerpio as its exclusive property all inventions, innovations, and IP rights related to her period of engagement under the CSA; and that plaintiff has breached her confidentiality, disclosure, and other obligations under both the CSA and MTA, including by assigning patent applications containing claims to Mannin (Count IV, conversion; Count V, unjust enrichment, Counts VII, VIII, declaratory judgment, Count IX, specific performance/injunctive relief). A decision as to whether Quaggin breached the CSA will impact Aerpio's claims against Mannin and the University, neither of which is alleged to have had a contractual or other relationship with Aerpio independent of Quaggin. (*See, e.g.,* Doc. 1, ¶¶ 47, 50: Aerpio's relationship with Quaggin "grew to include [the] University" in November 2013 after Quaggin became a professor there and Aerpio agreed to have her continue studying HPTPβ inhibitors, and Quaggin and the University became bound to an "ongoing contractual relationship with Aerpio" when they signed the MTA). Aerpio alleges that it suffered damages either as a result of Quaggin's breach of the MTA, or in the alternative as a result of the University and Quaggin's breach of the MTA, but Aerpio does not claim that it

suffered damages as result of the University's breach alone. (Doc. 1, Count II, ¶ 91). Given the largely contingent nature of these allegations against the University, the disposition of any claim against Quaggin related to Aerpio's IP and confidential, proprietary material would necessarily impact the disposition of Aerpio's claims against the University.

Similarly, Aerpio's claims against Quaggin and Mannin are factually and legally interrelated and pertain to both the CSA and the MTA. Aerpio claims that Quaggin breached the CSA by failing to obtain its written consent before disclosing confidential information publicly and to Mannin, and by assigning patent applications related to Aerpio's IP to Mannin. (*Id.*, ¶¶ 70-72, 73). Aerpio alleges that Mannin in turn caused to be disclosed, and filed patent applications disclosing and claiming the use of, technology "proprietary to Aerpio and/or developed under the terms of the CSA and/or [the] . . . MTA." (*Id.*, ¶ 63). Aerpio alleges that Mannin knew that interference with the parties' contractual obligations would cause damage to Aerpio's rights under both the CSA and/or MTA. (*Id.*, ¶ 62). Except for its breach of contract claims, all of Aerpio's claims are brought against both Mannin and Quaggin and all such claims are premised on Quaggin's allegedly unlawful disclosure of confidential information, and assignment of the patent applications, to Mannin. (*Id.*, Count III, tortious interference; Count IV, conversion; Count V, unjust enrichment; Count VI, *quantum meruit*; Counts VII, VIII, declaratory judgment; Count IX, specific performance/injunctive relief). Thus, resolution of Aerpio's contractual claims against Quaggin would impact the disposition of Aerpio's claims against Mannin.

Given the significant overlap of the claims and the parties in this lawsuit, a stay is warranted as to the claims against all parties, including the non-signatories to the CSA. The focus of Aerpio's complaint is Quaggin and alleged breaches of her obligations under the CSA,

and in turn the MTA. Those alleged breaches implicate both Mannin, the company Quaggin formed and in which she holds the title of Chief Scientific Officer, and the University, Quaggin's employer and signatory to the MTA. Aerpio alleges that Quaggin breached her obligations under the CSA by acting through the University and Mannin, or in conjunction with these entities. The claims against Mannin and the University cannot be determined in isolation without consideration of Quaggin's role in the alleged wrongdoing as pled in the complaint. The claims against all defendants are inextricably intertwined, and a stay of the entire litigation is necessary while matters which affect all claims in the litigation are arbitrated.

This does not end the Court's inquiry. A determination must be made as to whether a stay of the litigation pending arbitration on the contractual claims against Quaggin under the CSA will "unduly prejudice" Aerpio. Aerpio argues that it will be unduly prejudiced by a stay because it cannot obtain the most important relief it seeks through a ruling in its favor in arbitration - the "return of its patent rights." (Doc. 36 at 21). Aeprio alleges that Quaggin breached Sections 1.6, 2 and 3 of the CSA and immediately placed "the fruits of that breach ('the patent applications currently claiming the use of VE-PTP inhibitors that Quaggin learned from Aerpio')" out of its reach by transferring the applications to Mannin. (*Id*. at 22). Quaggin argues that Aerpio will not be substantially or irreparably harmed by a stay because a patent has not yet been issued to Quaggin, and Aerpio cannot be granted inventorship in a pending patent application. (Doc. 47 at 24).

Aerpio will not be unduly prejudiced by the delay resulting from arbitration. Aerpio does not allege it will be foreclosed from pursuing a judgment for equitable relief against Mannin if it prevails against Quaggin in arbitration, only that it will incur some delay. But any harm that might result from a delay in obtaining equitable relief against Mannin is outweighed by the

45

possibility that arbitration could moot Aerpio's claims for such relief or lead to inconsistent results on Aerpio's claims for equitable relief and its arbitrable claims against Quaggin. The equities therefore weigh in favor of Quaggin, who has shown a "pressing need" to incur the delay from arbitration in light of the significant overlap in the claims brought by Aerpio.

Consideration of the relevant factors leads the Court to conclude that this litigation should be stayed in its entirety pending the conclusion of arbitration. Aerpio entered into a contractual agreement with Quaggin. The parties agreed to submit "disputes in interpretation or effect" of the agreement to arbitration. Aerpio has presented claims in this Court which could be reasonably construed as arbitrable disputes with Quaggin under the terms of the CSA. These claims implicate the other defendants, whose potential liability hinges on whether Quaggin breached the terms of her contractual agreement with Aerpio. It is prudent to stay this litigation against all defendants until the arbitration has concluded and Aerpio's contractual claim or claims against Quaggin have been decided. To do so will avoid the risk of inconsistent results and duplication of the parties' and the Court's resources. The resultant delay will not unduly prejudice Aerpio given the significant overlap in the issues presented. Arbitration will advance and facilitate resolution of Aerpio's disputes with all three defendants. No matter which party prevails, arbitration of Aerpio's contract claims against Quaggin will establish parameters for the parties' liability and the relief Quaggin seeks in this lawsuit. *See Vaughn,* 2009 WL 3260382, at *2 (quoting *Capitol Indem. Corp. v. Dayton Bd. of Educ.*, 492 F. Supp. 2d 829, 839 (S.D. Ohio 2006)).

**IT IS THEREFORE ORDERED THAT**:

1. Aerpio's motion for leave to file an omnibus surreply (Doc. 53) is **GRANTED** in part as to Quaggin's motion to compel arbitration/stay the case.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  Defendant Quaggin's motion to compel arbitration/stay the case (Doc. 29) be **GRANTED** and this case be **STAYED** pending completion of the arbitration proceedings between plaintiff Aerpio and defendant Quaggin.

2.  The University's motion to dismiss the complaint (Doc. 32), Mannin's motion to dismiss the complaint for lack of jurisdiction or, in the alternative, to dismiss plaintiff's declaratory judgment claim as to patent application inventorship and/or stay all claims against Mannin pending arbitration between plaintiff and Quaggin (Doc. 42), and Aerpio's motion for leave to file an omnibus surreply (Doc. 53) as to the University and Mannin's motions to dismiss be **DENIED WITHOUT PREJUDICE AND SUBJECT TO RESUBMISSION** following the lifting of the stay.


Date: _9/26/19_                           Karen L. Litkovitz
                                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

AERPIO PHARMACEUTICALS, INC.,
    Plaintiff,

    vs.

DR. SUSAN QUAGGIN, et al.,
    Defendants.

Case No. 1:18-cv-794

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).